NOT DESIGNATED FOR PUBLICATION

No. 118,050

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
JULIE ANNE WHITE,
*Appellee*,

and

WALLACE BENNETT WHITE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; PAUL J. HICKMAN, judge. Opinion filed June 22, 2018. Affirmed.

*Wallace B. White,* appellant pro se.

No appearance by appellee.

Before MCANANY, P.J., LEBEN and SCHROEDER, JJ.

LEBEN, J.: Wallace White and Julie Doctor divorced in 1999 after having two children. They've had many disputes over the years—and the issue that's now before us on appeal involves divvying up bills they've each incurred getting medical treatment for their children.

Since Kansas adopted child-support guidelines in 1987, the medical expenses divorced parents pay for their children have generally been divided based on each parent's percentage of the parties' total income. Consistent with that approach, Wallace

and Julie's divorce settlement agreement provided that "[Julie] shall pay 35% and [Wallace] shall pay 65% of the medical expenses, not paid by insurance, of the minor children." The district court approved the parties' settlement agreement in 2000.

For Wallace and Julie, the medical expenses incurred for their children turned out to be significant. By 2005, Wallace had brought a motion seeking reimbursement for some of what he claimed was Julie's share of the expenses. While that motion was pending, the court entered an order in May 2005 that, going forward, "[t]he parties are to provide one another medical bills of the children within 30 days of receipt of the bill."

Eventually, the parties agreed in 2010 that Julie owed $25,357 to Wallace for her share of medical bills he had paid. That amount was garnished from funds being held for Julie by her attorney, apparently as the result of a settlement in an unrelated legal matter. The parties' 2010 agreement on the amount Julie owed covered the medical bills through November 2009.

By 2014, Wallace again sought court assistance for reimbursement of what he alleged was Julie's share of medical bills he had paid since November 2009. By that time, either by court order or the parties' agreement (it's unclear from the record we have), there had been a change in the division of medical bills: they were now split 50-50.

To get things ready for a court hearing, if needed, to determine the amount owed, the district court ordered two things in April 2014 (with the written documentation of this filed in May)—that the parties exchange copies of the bills and that the parties' attorneys try to agree on any reimbursement that might be owed:

> "As to the matter of past due medical bills paid by both parties since November[] 2009, the parties shall submit all of the medical bills that they have paid since that time to their attorneys and the attorneys shall share that information and submit their findings to

2

the [c]ourt as to what amount, if any, is owed to either of the parties. Both parties are responsible for 50% of the non-covered medical bills."

But no agreement was reached, and while other matters were presented to the court for resolution or agreed upon, the matter of divvying up the medical expenses got set over for later resolution.

Before the parties had an evidentiary hearing in August 2015 on Wallace's reimbursement request, the court entered some additional orders either about how the parties would share these medical expenses or about exchanging documents about the expenses before the hearing. In July 2015, the court entered an order providing that any "party incurring a medical expense" should share that bill with the other parent within 30 days. The other party was then to, within 30 days of that notice, "make payment arrangements with the health care provider[] or . . . reimburse the party incurring the expense." In addition, if "the second party does not pay his or her share or make appropriate payment arrangements, the incurring party shall have a judgment against the second party for the remaining amounts due." Also in July (though the written order was filed in August), the court ordered that the parties exchange the medical bills by July 17, 2015.

The parties presented their dispute to the court on August 21, 2015. The court concluded that Wallace owed $2,749 in reimbursement to Julie, but Julie owed even more—$3,866—to Wallace. So the court entered judgment in Wallace's favor for the difference, $1,117.

Wallace asked the court to reconsider, arguing that the court had improperly let Julie seek reimbursement for bills that she had incurred but hadn't paid yet. Wallace based his motion in part on the court's April 2014 order. It had required the parties to "submit all of the medical bills that they have paid since [November 2009]" to their

3

attorneys. Wallace argued that because that order referred to bills the parties had "paid," the court should not have considered bills Julie had incurred but not yet paid.

The court denied Wallace's motion to reconsider. The court also entered an order modifying the April 2014 order. The court said it should "be interpreted to mean that both parties are responsible for 50% of the 'incurred' not 'paid' medical bills for the minor children." Wallace then appealed to our court.

Before we discuss his specific claims, we need to set out the standard under which we must review the district court's ruling. The district court has authority to determine how the parties will pay their children's medical expenses as part of the court's authority to determine child support. See Kansas Child Support Guidelines § IV.D.4.b. (2018 Kan. S. Ct. R. 94); *In re Marriage of Davis*, No. 99,707, 2008 WL 5401480, at *2 (Kan. App. 2008) (unpublished opinion). We review a district court's child-support orders only for abuse of discretion. *In re Marriage of Thomas*, 49 Kan. App. 2d 952, 954, 318 P.3d 672 (2014). A court abuses its discretion if no reasonable person would agree with its decision or the decision is based on a factual or legal error. *In re Marriage of Johnston*, 54 Kan. App. 2d 516, 536, 402 P.3d 570 (2017), *rev. denied* 307 Kan. ___ (February 26, 2018).

We find no abuse of discretion in the district court's decision here to order reimbursements based on the amount of medical expenses *incurred* rather than limiting itself only to those already *paid*. The Kansas Child Support Guidelines simply say that "the court shall provide that all necessary medical expenses . . . should be assessed to the parties in accordance with the parties' proportional share" of their joint income. Kansas Child Support Guidelines § IV.D.4.b. Nothing suggests that only expenses paid, not merely incurred, may be considered.

Nor does Kansas caselaw limit the district court's consideration to paid bills. Wallace cites one case, *In re Marriage of Blagg*, 13 Kan. App. 2d 530, 775 P.2d 190 (1989), but we find nothing in it that would have limited the discretion of the district court in our case. The facts in *Blagg* largely arose before the Kansas Child Support Guidelines were adopted in October 1987. See 2 Elrod, Kansas Law & Practice: Family Law § 14:7 (2017-2018 ed.). And the court in *Blagg* noted that the divorce decree there didn't provide for medical expenses or health insurance for the parties' child. 13 Kan. App. 2d at 532-33. So the case appears to have been decided based on pre-guidelines rules and the specific orders that had been entered at the time the Blaggs were divorced, not something that would apply today in the Whites' divorce case. Even if the *Blagg* case had been decided based on current law, the parties didn't present a dispute in *Blagg* about whether the court lacked power to order one parent to reimburse the other for medical expenses incurred but not yet paid.

More importantly, we see no reason why such a rule *should* be applied to all cases. As the Whites' case makes clear, a parent may well encounter medical expenses for their children beyond the parent's current ability to pay them. Sometimes, one parent may arrange with a doctor or hospital to make payments over time for the bill. At other times, the parent may pay the full bill either with available funds or with a credit card. Some health-care providers may be willing to set up the accounts so that either parent may pay the provider; others may not. The district court should have the ability to consider what has taken place and then assess responsibility to pay the bills—or to reimburse the other parent—accordingly.

Here, the district court heard testimony from Wallace and Julie, and the court reviewed exhibits about the medical expenses that had been incurred. Wallace has complained generally about the way the court handled the bills—considering expenses shown to have been incurred rather than only those that had been paid. But he has not shown that the court's mathematical summary of each party's share of the bills incurred is

5

in error. We find no abuse of discretion in the district court's decision here to consider incurred expenses in addition to ones already paid.

In addition to his general objection, Wallace raises a couple of more specific ones.

First, he complains about the district court's order entered after he moved for reconsideration of its decision. In that order, the district court said that the court's April 2014 order ordering the parties to exchange "all of the medical bills that they have *paid*" (emphasis added) should "be interpreted to mean that both parties are responsible for 50% of the 'incurred' not 'paid' medical bills for the children." Wallace argues that the district court improperly modified his child-support obligation from a percentage of *paid* medical bills to a percentage of those merely *incurred*.

We think Wallace is reading too much into the April 2014 order. Except for specifying that the parties' responsibility for medical expenses was now 50-50 rather than the 35-65 percentages originally ordered, the April 2014 order didn't purport to modify the parties' obligations. Rather, that portion of the April 2014 order was merely a typical pretrial order getting the issues ready to be tried to the court, if necessary. In that vein, the court ordered the parties to submit their bills to the attorneys and ordered the attorneys then try to agree upon what was owed. It's worth noting that—before that April 2014 order—the parties hadn't presented any dispute to the court about whether reimbursements were limited to bills paid, not ones incurred but not yet paid.

We find support for our understanding in other orders the district court entered in advance of the evidentiary hearing on past medical expenses. The July 2015 order entered as part of a child-support modification provided a procedure for the handling of medical bills. Under it, the "party incurring a medical expense" must send the bill within 30 days to the other party or forego payment. Upon receipt of the bill, the other party "shall pay his or her share of said amount, make payment arrangements with the health care

6

provider, or shall reimburse the party incurring the expense." While this detailed procedure wasn't in earlier orders, there's nothing inconsistent between those provisions and the parties' original agreement (approved in the divorce decree) that "[Julie] shall pay 35% and [Wallace] shall pay 65% "of the medical expenses, not paid by insurance, of the minor children." While the percentages have changed, the July 2015 order's procedure still will result in Julie paying her designated percentage and Wallace paying his. And the court's ruling at issue in this appeal can too.

Wallace suggests that Julie may, in fact, never pay some of these bills. The district court had evidence before it making that suggestion, but the court apparently didn't find it persuasive. Wallace has not shown on appeal, based on the evidence presented to the district court, that he would be responsible for more than the 50% of medical expenses he's supposed to pay under the existing court orders. In any case, we do not agree with him that the April 2014 order limited Julie's ability to seek reimbursement only to already-paid medical bills.

Wallace's second specific objection is that the district court should have let him present some medical bills that he had received—but not yet paid—that the court excluded from evidence. What Wallace fails to address in his appellate brief is the district court's reason for excluding the evidence.

In addition to the April 2014 order that the parties exchange medical bills, the court had entered another order in early July 2015 that "[t]he parties shall exchange medical bills by July 17, 2015." That order made sure that each party would have notice of the other's claims and documentation before the August 21 hearing.

As far as we can determine from the hearing transcript, the only exhibits the district court excluded from evidence were ones that Wallace hadn't provided to Julie's attorney by July 17, 2015, as ordered. The district court can make appropriate pretrial

7

orders on the disclosure of evidence, and if a party fails to follow such orders, the court may prohibit the party from introducing things not disclosed into evidence. See K.S.A. 2017 Supp. 60-216(b)(1)(C), and (c)(2)(G); K.S.A. 2017 Supp. 60-237(b)(2)(A)(ii). The imposition of sanctions for the failure to obey a disclosure order is a matter of discretion for the district court, so we also review that decision only for abuse of discretion. *Shay v. Kansas Dept. of Transportation*, 265 Kan. 191, 194, 959 P.2d 849 (1998); *First General Services of Kansas City, Inc. v. Nedrow*, No. 109,246, 2013 WL 5975984, at *6 (Kan. App. 2013) (unpublished opinion). We find no abuse of discretion in the district court's decision here to limit the evidence to bills that had been exchanged by July 17, 2015, as the court had ordered.

We do recognize that Wallace has a legitimate concern. Unfairness could occur if Julie doesn't pay her share of the medical bills—and that could be especially bad if a health-care provider could collect the bill from Wallace. But Wallace did not show that this would be a likely result, and we cannot find that the district court abused its discretion when—after hearing all the evidence—it made the decision it did.

We affirm the district court's judgment.